THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* OLIVER JAMES STEPPS, Appellant.

Fourth Department, December 5, 1968.

60

*Harold Cohen* for appellant.

*John C. Little, Jr., District Attorney (Nicholas P. Varlan* of counsel), for respondent.

*Per Curiam.* Defendant appeals from a judgment of conviction of possessing a loaded firearm without a license in violation of subdivision 2 of section 1897 of the Penal Law.

On July 2, 1967, an automobile claimed to be owned by the defendant was involved in a collision with a utility pole in the City of Rochester. At that time it was being operated by a boy, identified only as Buie, who was about 15 years old. When the police arrived at the scene, the defendant and Buie were standing close to but outside the automobile. Defendant was charged with permitting an unlicensed person to operate his motor vehicle and was taken by the police to the Public Safety Building.

Thereafter, it appears that the police were told by Buie that there was a gun in the car. The police officers testified that Buie asked them if they would like him to get the gun for them and they assented, whereupon Buie went into the defendant's car and removed a .22 caliber revolver from behind an armrest in the rear seat. Later the police officers, Officer Tacito and Sergeant Marlin, went to the interrogation room where the defendant was being questioned. According to the testimony of the officers, his wallet and car keys were on the table in front of him. The officers claimed that the defendant gave them permission to take the keys from the table. They thereupon went to the garage to which the automobile had been taken and found a .32 caliber automatic weapon and a box of .32 caliber bullets in the glove compartment.

The defendant was indicted on two counts: the first, for possession of the .22 caliber revolver; and the second, for possession of the .32 caliber automatic. At the close of the People's case the Trial Judge dismissed the first count, apparently on the theory that the search was not incidental to the arrest and that Buie was not authorized to give a valid consent to the search. Therefore, we need not concern ourselves with that count.

The conviction was under the second count of the indictment, which charged that the defendant " did have in his possession a .32 caliber Echasa-Eibar Automatic, which was loaded with ammunition at the time, without having procured a written license issued to him, as prescribed by law."

The prosecution relied upon subdivision 3 of section 1899 of the Penal Law, which provides in part: " The presence in an automobile * * * of any firearm * * * is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon * * * is found ". However, that section does not help the prosecution because the proof was that the defendant was not an occupant of the automobile at the time the weapon was found. Moreover, there is no certainty from the testimony that he had even occupied the automobile at the time of the accident or for some time preceding it; it may well have been occupied by Buie alone.

Furthermore, the testimony concerning the important issue of how the police learned about the gun, for the possession of which defendant was convicted, and how they obtained the keys, is conflicting, at times contradictory, and extremely unsatisfactory. We do not believe that it is necessary to recount the many inconsistencies and contradictions. In view of the fact that the defendant was in custody at the time of the alleged consent to the search of the car, as the result of which the .32

automatic was found, there should be further inquiry into the circumstances surrounding the consent. We are not unmindful of the fact that hearings to suppress evidence relating to the guns were had and the evidence was not suppressed. However, the testimony at these hearings raises even more inconsistencies.

Search by consent is looked upon by the courts with suspicion. This is particularly true when the circumstances are such as to suggest coercion and where it is difficult to understand why a defendant, assuming he had knowledge of the presence of the weapon in the automobile, would freely consent to the search. The United States Supreme Court has indicated that voluntariness must be shown clearly. In *Bumper* v. *North Carolina* (391 U. S. 543, 548), the court said: '' When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.'' (See, also, *Amos* v. *United States*, 255 U. S. 313; *Pekar* v. *United States*, 315 F. 2d 319; *Marsh* v. *United States*, 29 F. 2d 172, 173.)

We do not reverse this conviction and grant a new trial solely on the ground that the search and seizure was conducted with the alleged consent of the defendant, because with proper proof it may be found that this search was lawful (cf. *People* v. *Coffey*, 11 N Y 2d 142, 148; *People* v. *Lane*, 10 N Y 2d 347; *People* v. *D'Angelo*, 24 A D 2d 829). We hold that the proof submitted in this case does not reach the standard necessary to show clearly that the consent was freely and voluntarily given.

The information under which defendant was detained initially and before indictment was placed in evidence by the defendant's counsel. This contained a number of statements pertaining to the material facts of the People's case and, in at least one instance, contradicted the testimony of Officer Tacito, who verified it. It mentioned an admission by the defendant to Detective DiGiovanni and Detective Prior that the gun was his and was in his automobile. This could have had the effect upon the jury of overcoming some of the deficiencies in the People's proof. Although this was offered by the defendant, the Trial Judge, in the interests of justice, should have preserved the rights of the defendant by excluding it because it was clearly incompetent and a portion of it was hearsay.

Finally, the identification of the gun was uncertain at best, if not inadequate. This was pointed out to the jury in the summation by defense counsel and, in an effort to cure the deficiency in the proof in this respect, the prosecuting attorney in his summation made the following statement over objection from defense counsel:

" MR. BERGIN: Another point that has been brought out is that the officer said that this is the gun without any identification whatsoever on the gun. He was able to just say this was the gun so, therefore, the police officer must be telling you an untruth because he couldn't possibly identify this gun coming into Court here. Well, this gun is in evidence. The clip is in evidence and you may ask to examine this gun in evidence and if you do you may remove the plate on the stock of the gun and you will find there the initials of the officer that testified here in Court.

" MR. COHEN: I object to it as not having been part of the evidence to identify the gun in this case.

" THE COURT: Your objection is noted."

There had been no testimony that the gun had been marked in the manner indicated by the District Attorney and, while the defendant and his attorney both consented to have the jury take the exhibits into the deliberation room and although it does not appear that the jury requested them, the prosecuting attorney still acted improperly in, in effect, attempting to supply this deficiency of proof in his summation.

Because of the inadequacies that we have mentioned of certain material proof, because the decision of the jury as to some of the other proof was contrary to the weight of evidence, there should be a new trial.

We also conclude that the informal order denying a motion to suppress certain evidence should also be reversed and a new hearing held prior to the new trial. The focal point of the hearing was whether or not appellant consented to a search of an automobile claimed to have been owned by him. The finding implicit in the decision of the court denying the motion that such consent was given was contrary to the credible evidence.

The order (oral) of November 9, 1967 denying the motion to suppress certain evidence and the judgment of December 29, 1967 should be reversed on the law and facts, and a new hearing of the motion to suppress and a new trial should be had.

BASTOW, P. J., MARSH and WITMER, JJ., concur in *Per Curiam* opinion.

WILLIAMS and HENRY, JJ., concur as to the reversal of the judgment and the granting of a new trial, but dissent from the reversal of the order and the granting of a new suppression hearing, in the following memorandum: We dissent from the determination of the court directing a new hearing in the suppression proceeding because, in our opinion, the determination of the Trial Judge in that hearing was completely correct. Suppression could not be granted as a matter of law, and we do not

find that on the record of that hearing the determination was against the weight of the evidence. The determination should be based on the suppression record only and not on what developed subsequently.

Order (oral) of November 9, 1967 denying motion to suppress certain evidence, and judgment of December 29, 1967, reversed on the law and facts and a new hearing of the motion to suppress, and a new trial, granted.