THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BARRY L. GORSLINE, Appellant.

Third Department, April 3, 1975

*John H. Owen* for appellant.

*George S. Kepner, Jr., District Attorney,* for respondent.

GREENBLOTT, J. The basis for this appeal is the alleged error of the trial court in its intermediate order of December 10, 1973 wherein, following a hearing, it denied defendant's motions to suppress a revolver and an oral confession allegedly made by defendant. Despite his plea of guilty, defendant's right to appeal is preserved by statute (CPL 710.70, subd 2).

At the suppression hearing, the People called two witnesses, Angellotti and Turner, police detectives for the City of Oneonta. They testified that in the course of an investigation of a burglary at an Oneonta service station, they were in-

formed by officers of the New York State Police that the defendant had been taken into custody by the State Police in Delaware County while in possession of a revolver allegedly stolen from the Oneonta service station at the time of the burglary. Each of the detectives testified that the defendant orally admitted to them that he had committed the burglary in question, and had taken the revolver from the service station. He further allegedly admitted that he started to hitchhike to Kingston, carrying the gun in a paper bag, and was stopped by two officers of the State Police near Delhi. They testified that the defendant stated that he threw the gun over the side of a bridge into a creek, from where it was recovered by the State Police, sent to the State Police Laboratory and determined to have been stolen in the Oneonta gas station burglary.

The defendant testified that while carrying a brown paper bag containing gloves and a revolver, he was walking on Route 28 near Delhi when a uniformed State trooper stopped his car opposite him. When the defendant produced no identification, the officer inquired as to his destination, and where he was coming from. The defendant replied that he was going to Kingston and had come from Oneonta. The officer then asked what was in the paper bag. The defendant testified "I said a pair of gloves. He said, '[l]et me see them' I gave him the bag which had the gloves and the gun was inside the gloves." The defendant denied that he had thrown the gun over the bridge into the creek.

The prosecution then requested an adjournment for the purpose of calling the arresting trooper as a witness. The defense counsel objected, and the trial court, while not specifically denying the request for adjournment, ruled in favor of the People on the admissibility of defendant's alleged statement, and further stated: "In connection with the revolver, again based upon the present record, I am not going to suppress it. The record indicates that this individual was not the owner thereof and that at the request of the state trooper, when this individual was not under arrest, was simply being questioned and talked to which they have a right to do, voluntarily turned this paper bag over to the trooper and he lawfully came by it and apparently he, in turn, turned it over to the Oneonta City Police".

The trial court's ruling constitutes a finding that defendant consented to a search. Such a finding is without support in the

record. It was the testimony of the Oneonta detectives that the defendant told them that he had thrown the gun over the bridge into the creek, when it was recovered by a State Police officer. This testimony was obviously rejected by the trial court. The defendant's testimony likewise provides no basis for the court's ruling, for he contends that the police officer demanded to see the contents of the paper bag.

As the Court of Appeals recently stated: "Whenever an individual is physically or constructively detained by virtue of a significant interruption of his liberty of movement as a result of police action, that individual has been seized within the meaning of the Fourth Amendment *(Terry v Ohio* [392 US 1]). This is true whether a person submits to the authority of the badge or whether he succumbs to force." *(People v Cantor,* 36 NY2d 106, 111.)

The court went on to state (pp 112–113): "The proscription against unreasonable searches and seizures is designed to prevent random, unjustified interference with private citizens whether it is denominated an arrest, investigatory detention, or field interrogation *(Davis v Mississippi,* 394 US 721; *Cupp v Murphy,* 412 US 291; see, generally, La Fave, Arrest: The Decision to Take a Suspect into Custody [1965]; Reich, Police Questioning of Law Abiding Citizens, 75 Yale LJ 1161). Street encounters between the patrolman and the average citizen bring into play the most subtle aspects of our constitutional guarantees. While the police should be accorded great latitude in dealing with those situations with which they are confronted it should not be at the expense of our most cherished and fundamental rights. To tolerate an abuse of the power to seize or arrest would be to abandon the law-abiding citizen to the police officer's whim or caprice and this we must not do. Whenever a street encounter amounts to a seizure it must pass constitutional muster.

"In New York the authority to intercept persons on the street is derived from two sources, the stop-and-frisk law (CPL 140.50) and the common-law power to inquire. Although the former is more narrowly circumscribed than the latter, because it entails a greater intrusion on the privacy of the individual, neither may be exercised in derogation of the State and Federal Constitutions.

"Before a person may be stopped in a public place a police officer must have reasonable suspicion that such person is committing, has committed, or is about to commit a crime

(CPL 140.50). Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand. (Compare, Schwartz, Stop and Frisk: A Case Study in Judicial Control of the Police, 58 J. Crim. L.C. & P.S. 433, 445 [1967] with La Fave, 'Street Encounters' and the Constitution: Terry, Sibron, Peters, and Beyond, 67 Mich L Rev 40, 70 (1967].) To justify such an intrusion, the police officer must indicate specific and articulable facts which, along with any logical deductions, reasonably prompted that intrusion. Vague or unparticularized hunches will not suffice *(Terry v Ohio, supra; Wong Sun v United States,* 371 US 471, 479). Nor will good faith on the part of the police be enough to validate an illegal interference with an individual (e.g., *Terry v Ohio, supra; Henry v United States,* 361 US 98; *Hill v California,* 401 US 797; *Smith v County of Nassau,* 34 NY2d 18)."

Here no evidence was presented by the People which under the above-stated rules justifies detaining a person on the street and searching his person or property. Nor is this deficiency cured by the finding of the trial court that defendant consented to a search. Because consent rests upon a waiver of basic constitutional rights, " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights" *(Johnson v Zerbst,* 304 US 458, 464). While ordinarily a defendant bears the burden of showing illegality of a search, where it is alleged that a search was consensual, "the burden of proof rests heavily upon the People to establish the voluntariness of that waiver of a constitutional right" *(People v Whitehurst,* 25 NY2d 389, 391). That burden was not met for the simple reason that the People produced no evidence whatsoever to show a consent by defendant to a search of property in his possession, and defendant's testimony, which was uncontroverted except by the testimony of the Oneonta detectives which obviously would not support a finding of consent, cannot support a finding other than that defendant submitted to authority.

Submission to authority is not consent, nor can it be found from failure to argue with a police officer. We are unable to comprehend any valid reason for the failure to produce the arresting officer to whom according to the trial court, the revolver was voluntarily given. Since we find that the People have failed to produce any evidence of a consensual search,

the seizure of the gun was therefore unlawful and must be suppressed.

Having arrived at this conclusion, we are also constrained to exclude from evidence the oral admissions and confession of the defendant. There is no showing of probable cause for initially stopping defendant on the public way, and we are unable to reach any conclusion on the present record other than that defendant would not have been taken into custody, and his admissions thereafter obtained, had the revolver not been unlawfully seized.

The testimony of the Oneonta detectives at the suppression hearing inescapably leads to the conclusion that the defendant became the target of the investigation, was taken into custody, and was confronted by the police with the fact that he had been found in possession of the gun which was stolen from the burglarized premises. Thus trapped, the oral admissions followed. The admissions thus are clearly the products or fruit of an illegal search and seizure and are barred under the "fruit of the poisonous tree" doctrine. The rule enunciated in *Mapp v Ohio* (367 US 643) renders inadmissible "not only the items obtained, but any evidence which stems from their use" *(People v Rodriguez,* 11 NY2d 279, 286). We must therefore order the suppression of the defendant's admissions and confession.

The judgment and order should be reversed, on the law and the facts; the order denying the motion to suppress revolver and oral admissions should be reversed, and the motion granted.

HERLIHY, P.J. (dissenting). It is unreasonable to assume that the trial court was discrediting the admissions which the detectives stated had been made to them as to the manner in which the State Police had obtained the revolver. At most, its decision indicates that the trial court was merely finding that upon the defendant's own version of the facts there was no illegal search and seizure.

The suppression hearing does not disclose facts which would bring into play any interference by the State Police with the defendant's liberty prior to the voluntary handing over of the revolver which could or would be proscribed in accordance with the principles described in *People v Cantor* (36 NY2d 106) relied upon by the majority. According to the defendant's testimony the occurrence was as follows:

"A. I was walking down the road. I looked back. I saw a car, a police car. To my knowledge I knew it was an unidentified car. I kept walking. I had a brown paper bag in my pocket with gloves and the revolver in the gloves. I kept walking down and later on the state trooper came back and pulled across opposite of me. I walked across. He asked if I had identification. I said, 'No'. He asked where I was going. I said 'Kingston'. He asked where I was coming from. I told him 'Oneonta'. He asked what was in the brown paper bag. I said a pair of gloves. He said, 'Let me see them'. I gave him the bag which had the gloves and the gun was inside the gloves. He looked inside there and said, where did I get it. I said I found it outside of Delhi. I kicked a bag. I looked inside and there was the revolver. This is what I told him. It is written down in a report."

There is no allegation herein that he was stopped by the State Police officer but rather the State Police officer stopped and the defendant voluntarily walked over and engaged in conversation with him. While the version of the events as told by the defendant might not have sustained a right on the part of the police officer to have stopped him for the purpose of any inquiry *(People v Cantor, supra)*, the record does not disclose any such interference with the defendant's liberty. Ordinarily, the better method of establishing the factual version relied upon by the People to show that there was no illegal search and seizure would have been to present as a witness the law enforcement officer who had been directly involved in the initial confrontation with the defendant upon the highway. However, it having been established that the defendant's confessions and/or admissions were not unlawfully obtained, such admissions would warrant reliance by the People thereon to establish the factual aspects whereby the revolver was acquired by law enforcement officials.

The present record does not contain any facts comparable to those which were found by the Court of Appeals to have been an unwarranted detention of a citizen in the *Cantor* case. Accordingly, the obvious voluntariness on the part of the defendant in complying with the request of the police officer to see what was in the bag is not tainted by any unwarranted stopping.

Upon the present record, the revolver was not illegally obtained and the trial court correctly denied the motion for suppression. Furthermore, it should be noted that the record

established that the defendant had already pled guilty to the crime of illegal possession of a weapon in regard to the said revolver, and the time to have raised the issue of illegal seizure would have been prior to the plea of guilty to the crime of illegal possession of a weapon.

Upon this appeal the defendant contends the sentence imposed was excessive. The record does not disclose that any violence was involved and, while it was readily apparent that a sentence of imprisonment would be justified, it does appear that the ends of justice would be better served by reducing the term. However, the reversal of the judgment and order by the majority precludes a consideration of the sentence for harshness by the court at this juncture in the proceedings.

The order should be affirmed and the judgment modified by reducing the term of imprisonment imposed.

SWEENEY, MAIN and LARKIN, JJ., concur with GREENBLOTT, J.; HERLIHY, P.J., dissents and votes to affirm in an opinion.

Judgment and order reversed, on the law and the facts; order denying the motion to suppress revolver and oral admissions reversed, and motion granted.