■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS RIVERA, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Schwartzwald, J.), rendered June 10, 1981, convicting him of criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress physical evidence. Judgment reversed, on the law, motion to suppress physical evidence granted, indictment dismissed and case remanded to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. Testimony was offered at a *Mapp* hearing by one of the arresting officers and defendant's wife regarding the events which culminated in defendant's arrest. The versions were, as might be expected, sharply conflicting. Crediting the officers' testimony, as did the suppression court (cf. *People v Prochilo,* 41 NY2d 759), the following occurred on the afternoon of September 16, 1980. Uniformed Officers Sanders and De Jesus received a radio run to meet a complainant at the corner of Bushwick Avenue and Granite Street in Brooklyn. There they met Nelson Leon who told the officers that he had been shot a few days earlier by a man who attempted to rob him and that he had just seen this man go into a nearby house. Leon told them that the man's name was Rivera and pointed out the two-family house to them. Leon was told to wait in the police car. When a backup unit arrived on the scene, Sanders knocked on the door of the house; De Jesus was standing near the sidewalk. A woman, later identified as defendant's wife, opened the door and answered affirmatively when asked if Mr. Rivera lived there and whether he was at home. Sanders told Mrs. Rivera that he wanted to, or was going to, see her husband. Sanders was concerned for his own safety and had his hand on his gun at the time; De Jesus did not. The two backup officers were watching to see if anyone tried to leave from the rear of the house. Mrs. Rivera let Sanders and De Jesus into the apartment, closing the outside door behind them. The officers' intention in seeking entry into the apartment was to conduct an investigation into the attempted robbery of Leon. They planned to take defendant into custody only if Leon identified him as his assailant. Mrs. Rivera led the officers into and through the apartment. Sanders saw some boxes but he did not look in them; Mrs. Rivera subsequently stated that they were getting ready to move. Mrs. Rivera walked through the dining room and into the kitchen, which were separated by a divider, followed by Sanders, who saw the defendant in the latter room. As Sanders walked, he saw a gun in a green "Army type fabric" case lying on a bookshelf. Sanders picked up the gun and noted that it was loaded with five live rounds and one spent round. Sanders asked Mrs. Rivera to whom the gun belonged; she replied that the gun was her husband's. The officers took the defendant into custody, returned to the precinct house, and vouchered the gun. Following the *Mapp* hearing, the court denied defendant's motion to suppress and he was subsequently convicted after a trial at which his wife did not testify. The motion

should have been granted. When the People rely on consent to justify an otherwise unlawful police intrusion, they bear the "heavy burden" of establishing that such consent was freely and voluntarily given (*People v Gonzalez,* 39 NY2d 122, 128; *People v Kuhn,* 33 NY2d 203, 208). The voluntariness of consent must be evaluated from the totality of the circumstances (*Schneckloth v Bustamonte,* 412 US 218, 227; *People v Gonzalez, supra,* pp 128-130). Although the consenter need not be advised of his or her right to refuse to consent (*People v Kuhn, supra,* p 209), failure to so advise may be considered in determining whether consent was voluntary (*Schneckloth v Bustamonte, supra,* p 227). Here, Mrs. Rivera, a woman not shown to have had any prior encounter with the criminal justice system, was confronted at the door to her apartment by a uniformed police officer whose partner stood nearby. The officer at the door, after initial inquiries, then told her that he wanted, or was going, to see her husband but did not state any reason therefor. The officer clearly had his hand on his service revolver at the time. The consent to enter the apartment cannot be deemed voluntary. Although the consent was not as egregiously obtained as in *People v Loria* (10 NY2d 368, entry gained by submission to authority after threats to kick down door is not gained by voluntary consent), mere submission to authority is not voluntary consent, nor can such consent be found from a failure to argue with the officer (*People v Gorsline,* 47 AD2d 273). Furthermore, the "display of weapons is a coercive factor that sharply reduces the likelihood of freely given consent" (*Lowery v State,* 499 SW2d 160, 168 [Tex]). Finally, as consent rests upon a waiver of basic constitutional rights, courts indulge every reasonable presumption against the waiver of such rights (*People v Gorsline, supra,* p 276, citing *Johnson v Zerbst,* 304 US 458, 464). The People's heavy burden of establishing voluntary consent was not met. Under the circumstances, there must be a reversal and dismissal of the indictment. Mollen, P. J., Lazer, Mangano and Brown, JJ., concur.