OPINION OF THE COURT
Michael A. Corriero, J.
On May 11,1981, the defendant, Carlos Rivera, was convicted after a jury trial of criminal possession of a weapon in the third degree (Penal Law § 265.02 [3]). On June 10, 1981 he was sentenced as a “Second Felony Offender” (Penal Law § 70.06 [1] [b] [v]) to an indeterminate period of incarceration of two to four years. The defendant was granted a stay of execution of sentence, pending appeal and on November 1, 1982 the Appellate Division, Second Department, unanimously reversed the defendant’s conviction and ordered the indictment dismissed (People v Rivera, 90 AD2d 778 [2d Dept 1982]). Subsequently, the Court of Appeals reversed the order of the Appellate Division, reinstated the defendant’s conviction and remanded the matter to the Appellate Division for further determination of the facts (People v Rivera, 60 NY2d 910 [1983]). On December 31, 1984, the Appellate Division, rejecting all other grounds for reversing, *594 affirmed the original conviction and remanded this matter to Criminal Term for execution of sentence.[1]
The defendant, citing People v Broadie (37 NY2d 100 [1975]), now moves to set aside his sentence pursuant to CPL 440.20 on the ground that its execution, at this time, would violate his 8th Amendment constitutional guarantee against cruel and unusual punishment (Rummel v Estelle, 445 US 263 [1980]; Coker v Georgia, 433 US 584 [1977]).
At the outset, it must be noted that the power of a trial court to set aside a sentence under such circumstances is narrow, and should rarely be exercised. However, the ultimate determination as to whether a sentence exceeds constitutional limits or is “just” as well as “legal” must rest lawfully and morally with the official responsible for authorizing the execution of the sentence — the judge.
The rationale underlying that authority is explained by Chief Judge Breitel (author of People v Broadie, supra) in his dissenting opinion in People v Jones (39 NY2d 694, 701 [1976]). “While justice and law may not be coextensive, and indeed they are not, a divergence too great is not tolerable or acceptable under constitutional limitations based on due process of law, equal protection of the law, and cruel and unusual punishment. Margin for discrepancy there may be between law and justice but not an ocean’s breadth justified only by adherence to the letter.”
The issue presented by this application requires the court to consider the impact of a decision settiiig aside a legislatively mandated sentence upon concepts fundamental to our system of justice: Consistency in the application of the law; maintenance of the balance of power between the legislative and judicial branches of government; the court’s traditional exercise of judicial restraint.
Cognizant of those concepts the court, in arriving at a decision, had to consider these questions:
Who is the defendant Carlos Rivera?
What was his crime?
What does society demand and require of him as punishment?
What is the legal and just sentence?
*595 Who is Carlos Rivera?
Carlos Rivera is a 49-year-old man who is married and the father of three children. He is a man whose youth was apparently wasted through drug addiction and explains his extensive although not recent criminal history. Between 1952 and 1969, the defendant was convicted of six misdemeanors and two felonies, all nonviolent narcotics related offenses. On December 4, 1969 he pleaded guilty to criminal possession of a dangerous drug in the fifth degree, a class E felony and received an indeterminate sentence of 0 to 3 years, his first extended period of incarceration. Upon his release from prison in mid-1971 until September 16, 1980, the date of the instant offense, Mr. Rivera was neither arrested nor convicted of any crime and apparently began to lead the life of a responsible family man.
What was his crime?
On September 16, 1980, the police acting upon information provided by a purported shooting victim, entered the defendant’s home and discovered a loaded weapon in open view in his family’s living room. The defendant, who was in a different room at the time, was arrested based upon the informant’s previous statement and his wife’s concession to the police that the gun was her husband’s. The defendant was charged with the alleged previous assault as well as the instant charges, but prior to trial all crimes except the September 16, 1980 weapons possession were dismissed by the People, presumably for lack of credible or available evidence. Ultimately he was convicted of the sole remaining count in the indictment.
Rarely has this court seen, in light of the nature of this offense, such a confluence of factors impact so negatively upon a defendant who for nearly 16 years, except for the instant offense, avoided conflicts with the law. At every turn from the time the police entered the defendant’s apartment on September 16,1980 through his arrest, indictment, trial, conviction, reversal, dismissal, reinstatement, affirmance and surrender for execution of sentence, every close call, whether factual or legal has been resolved against the defendant: The defendant, not in physical possession of the weapon, nor even present in the same room where it was found, was convicted upon the jury’s reliance upon an evidentiary presumption of constructive possession and circumstantial evidence; possession of a weapon in one’s home is ordinarily a misdemeanor (Penal Law § 265.01) except, as in this case, if the alleged possessor has a previous criminal conviction (Penal Law § 265.02 [1]); the defendant qualified as a “predicate felon” for sentencing purposes even though he had *596 not been convicted of a crime for nearly 12 years, since the 19 months he spent in prison tolled the “ten” year applicability of the predicate felon sentencing statute (Penal Law § 70.06 [1] [b] [v]).
While alternatives to incarceration are generally available upon conviction of the substantive felony of possession of a weapon (Penal Law § 265.02), this court’s discretion herein was limited, because of the defendant’s predicate felon status, to a period of incarceration ranging from a minimum of two to four years to a maximum of three and one-half to seven years.
What does society demand, need and require of the defendant as punishment?
Despite the defendant’s prior criminal history and drug addiction it appears, based upon all the available information, including an extremely thorough updated presentence report prepared by the Probation Department, that Carlos Rivera has developed into an individual of many positive traits and accomplishments.
All indications are that the defendant is a concerned and devoted family man, actively assisting his wife in rearing their three young children, the oldest of whom suffers from severe physical ailments and mental disabilities. While the defendant and his family have long been maintained by public assistance, he has over the past four years worked to the verified satisfaction of several employers at odd carpentry jobs. His employers speak highly of his conscientiousness and trustworthiness. Currently, the defendant remains employed in a custodial capacity at the Century Paramount Hotel and his employer affirmatively indicates that Mr. Rivera’s continued employment is welcome.
Furthermore, the defendant has since August of 1981 been continuously involved in the methadone maintenance treatment program at Albert Einstein College of Medicine’s Melrose Clinic, where he was described by his counselor as “a model client”. Verified reports indicate that the defendant has only had negative urine specimens and has reduced the amount of methadone on which he is maintained. His counselor described the defendant as a family man who “apparently has a loving and stable family structure, that sustains and motivates him in his effort to improve the quality of his life for himself and for his family”. Moreover, the defendant’s maintenance counselor has stated that he views an interruption of the defendant’s treatment as counterproductive in that it would interfere with his considerable progress towards becoming a productive member of society. Finally, the Probation Department itself lauds the defendant for his commitment to change. “It would appear that the *597 defendant’s lifestyle has improved dramatically since his last appearance (1981) before this department”.
Proper consideration of the instant motion, however, requires not only an evaluation of the defendant and the facts surrounding his crime, but also the nature of the crime itself.
The illegal possession of a handgun is a serious offense. The Legislature prescribed a special scheme of punishment for possession of such weapons in the 1980 gun control legislation.[2] (L 1980, ohs 233, 234.) The overriding theme of the legislation was to mandate the vigorous prosecution of weapons charges.[3] That legislation however continued to classify possession in the home as a less serious offense than “street” possession, unless the possessor had a prior criminal conviction. (Penal Law § 265.02 [4]; § 265.01 [1].) The 1980 legislation was prompted by public concern for the proliferation of illegal handguns, especially by persons previously convicted of crimes. That concern was based upon the assumption that such a person is likely to possess the gun in order to facilitate the commission of other crimes. Consequently, the Legislature provided for mandatory minimum jail sentences for possession of a handgun by a prior felon whether on the “street” or in the “home”. (Penal Law § 70.06.) In the instant case, however, all of the available information reflects that Carlos Rivera did not possess the subject weapon in order to facilitate the commission of other crimes.
In People v Broadie (37 NY2d 100, supra), the seminal case relied upon by the defendant, Chief Judge Breitel recognized that in “rare” cases application of a mandatory sentence would constitute cruel and unusual punishment. This is one of those “rare” cases.
What is the legal and just sentence?
Justice Breitel recognized that justice and law are not always coextensive; crucial to that observation is the notion that at times justice is larger than law and therefore the art of sentencing is the narrowing of any discrepancy between the two. Although the Constitution will tolerate a disparity between the dictates of law and justice in recognition of human limitations, the margin between the two may not be the “ocean’s breadth” so accurately described by Chief Judge Breitel in Jones (39 NY2d 694, supra).
*598 In this court’s view, the application of the mandatory sentence to this defendant serves no useful social purpose, the available social evidence concerning this defendant clearly reveals him as a man who has not chosen to ignore his drug addiction, his family or his responsibility to society. Many individuals addicted to drugs choose violence and theft as a means of nurturing that addiction. The defendant, instead, chose a maintenance program and legitimate employment not to nurture his addiction but to nurture his family. Ironically, it might have been said of this defendant, prior to his instant conviction, that the “system” had succeeded in “rehabilitating” him.
The case at bar has traveled through the criminal justice system for nearly five years during which time the defendant has continued his struggle to improve his life. The court cannot at this late juncture ignore all that society has now gained through that effort.
Therefore, I find that in the instant matter, as a result of the Constitution’s demands, the sentencing statute’s devised requirement for retribution and deterrence should be balanced and indeed yield to the proper sentencing goal of rehabilitation of the individual (People v Oliver, 1 NY2d 152).
In this court’s view a sentence that does not apply a statutorily mandated term of imprisonment, when to do so would be cruel, unusual or a violation of fundamental due process, is a “legal” sentence.
Accordingly, the defendant’s motion to set aside his sentence as violative of his constitutional right against cruel and unusual punishment is granted. (People v Notey, 72 AD2d 279 [2d Dept 1980]; People v Robinson, 68 AD2d 413 [1st Dept 1979]; see also, People v Suitte, 90 AD2d 80 [2d Dept 1982].)
Defendant is sentenced to probation for a period of five years commencing May 8, 1985.[4]

. The Judge who had presided at the defendant’s trial and sentence, then an Acting Justice of the Supreme Court, has since by administrative order been “rotated” to the Criminal Court. Pursuant to administrative practice, the matter was referred to this part (Complex E), the complex part of origin.

. The effective date of that legislation was Aug. 12,1980. (Less than five weeks prior to the date of the instant offense.)

. An excellent analysis of the entire statutory scheme is available in People v Garcia (NYLJ, Jan. 15,1985, p 11, col 5 [Sup Ct, NY County 1984]).

. This court notes that defendant has previously served a total of 49 days of imprisonment during the pendency of this charge.